UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Heath Chase

     v.                              Civil No. 04-cv-486-JD
                                       Opinion No. 2005 DNH 092
Peter Ash, et al.


O R D E R


     Heath Chase and three other minimum security inmates were
involved in an incident at the New Hampshire State Prison farm on
November 5, 2004.  Chase brought a civil rights action and sought
injunctive relief, alleging that prison staff, most of whose
names he did not know, used excessive force against him in the
course of that incident, confined him in inhumane conditions,
were deliberately indifferent to his serious medical needs,
wrongfully held him in the secured housing unit in violation of
due process, and retaliated against him because of his complaints
about violations of his constitutional rights.  Officers Peter
Ash, Jonathan Makara, and Hormick were identified as part of the
group who allegedly retaliated against Chase.  He also named the
warden, Bruce Catrell, in his official capacity, seeking only
injunctive relief from him.

     Ash, Makara, and Cattell move for summary judgment.  Hormick
was previously dismissed from the suit.  With his objection to
summary judgment, Chase moved for voluntary dismissal of all of

his claims, without prejudice.  The defendants object to the
motion for dismissal without prejudice.

I.  <u>Motion to Dismiss Claims without Prejudice</u>

     After the opposing party has served its answer or a motion
for summary judgment, the plaintiff can voluntarily dismiss
claims without prejudice only by leave of the court "upon such
terms and conditions as the court deems proper."  Fed. R. Civ. P.
41(a)(2).  In deciding a motion under Rule 41(a)(2), the court
must consider "'the defendant's effort and expense of preparation
for trial, excessive delay and lack of diligence on the part of
the plaintiff in prosecuting the action, insufficient explanation
for the need to take a dismissal, and the fact that a motion for
summary judgment has been filed by the defendant.'"  <u>In re
Urohealth Sys., Inc.</u>, 252 F.3d 504, 505 (1st Cir. 2001) (quoting
<u>Doe v. Urotheal Sys., Inc.</u>, 216 F.3d 157, 160 (1st Cir. 2000));
<u>accord</u> <u>Guptill v. Martin</u>, 228 F.R.D. 62, 65 (D. Me. 2005).

     In this case, Chase identified and served only three
defendants, Ash, Makara, and Cattell.  Defendant Hormick was
never served, and the claims against him were dismissed without
prejudice on May 9, 2005.  Most of Chase's claims are alleged
against Doe and Roe defendants who have not been identified or
served in the nineteen months that this case has been pending.

Because those defendants have not filed answers or motions for summary judgment, having never been served, the claims against them may be voluntarily dismissed without prejudice and without leave of court by filing a notice of dismissal.  Fed. R. Civ. P. 41(a)(1).  In addition, given Chase's failure to identify and serve those defendants within a reasonable amount of time, the claims against them may be dismissed without prejudice by the court.  See Figueroa v. Rivera, 147 F.3d 77, 83 (1st Cir. 1998). Therefore, the claims alleged against the Doe and Roe defendants are dismissed without prejudice.

In support of his motion to voluntarily dismiss all of his claims without prejudice, Chase explains that he filed suit "at a time when he needed and requested an emergency temporary restraining order due to ongoing retaliation within the prison's maximum security unit.  Defendants moved plaintiff out of that unit on the morning of the scheduled TRO hearing in this court." Motion at 1.  Chase states that discovery and the defendants' motion for summary judgment, along with its supporting documentation, "brought new and more detailed information to light that may significantly narrow and focus plaintiff's claims."  Id.  He suggests that he would not refile claims for constitutionally deficient medical care or alleging that his transfer to SHU violated due process.  In addition, Chase

represents that one of the other inmates involved in the November 5 incident, Corey Thomas, has contacted his counsel and would like to file a joint complaint with Chase.

Ash, Makara, and Cattell object to dismissal of Chase's claims without prejudice on the grounds of delay and prejudice. They represent that they responded to all of Chase's discovery requests by the end of August, 2005, which gave him all of the information necessary to amend his complaint.  They argue that the year delay in filing the motion should not be excused.  They also contend that their attorneys have expended more than 175 hours in investigating and preparing this case.  They assert that a decision on their motion for summary judgment would narrow or eliminate Chase's claims.  They object to Chase filing a joint suit with Corey Thomas and point out that a third member of that group, who is represented by the same counsel who represents Chase, has filed a separate action arising from the farm incident.  The defendants ask for an award of their attorneys' fees and costs if the court were to grant Chase's motion.

Given the delay in moving for voluntary dismissal and the pending motion for summary judgment, the court will first address summary judgment.  If any claims remain unresolved by summary judgment, the court will consider whether to allow voluntary dismissal without prejudice of the remaining claims.

4

II.   <u>Motion for Summary Judgment</u>

Chase sued Catell only in his official capacity, as warden
of the prison, and as to him, Chase sought a temporary
restraining order and preliminary injunction to require the
warden to move him to a minimum security unit in the prison.
That claim was resolved on December 27, 2004, and was withdrawn.
Chases's claims against the Roe and Doe defendants are dismissed
without prejudice, as explained above.   Therefore, the only
claims remaining in this case are Chase's retaliation claims
against Ash and Makara in Count IV.   Ash and Makara contend they
are entitled to summary judgment because there is no evidence
"that permits a reasonable inference that any alleged acts of
mistreatment are in any way connects [sic] to filing complaints
or grievances."   Mem. at 23.

<u>Standard of Review</u>

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."   Fed. R. Civ. P.
56(c).   The party seeking summary judgment must first demonstrate
the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

### Discussion

"Official reprisal for protected speech 'offends the Constitution [because] it threatens to inhibit exercise of the protected right,' Crawford-El v. Britton, 523 U.S. 574, 588, n. 10 (1998). . ., and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out, id., at 592; see also Perry v. Sindermann, 408 U.S. 593, 597 (1972) (noting that the government may not punish a person or deprive him of a benefit on the basis of his 'constitutionally protected speech')." Hartman v. Moore, 126 S. Ct. 1695, 1701 (U.S. 2006).  To prove a retaliation claim, a prisoner must establish:  (1) that he engaged in constitutionally protected conduct, (2) that the defendants took an adverse action against him, and (3) that a causal connection exists between the adverse action and the prisoner's protected conduct in that the

6

defendants intended to retaliate or were motivated to retaliate by the prisoner's protected conduct.  Morris v. Powell, 449 F.3d 682, 684 (5th Cir. 2006); Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004); Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001); Thaddeus-X v. Blatter, 175 F.3d 378, 389 (6th Cir. 1999); Price v. Wall, 428 F. Supp. 2d 52, 55 (D.R.I. 2006).

In this case, Ash and Makara concede that Chase's complaints about treatment he received at the prison are entitled to First Amendment protection.  They contend that they are entitled to summary judgment because Chase cannot show that they engaged in any retaliatory actions against him.  That is, they deny that they engaged in any adverse actions as to Chase, and they deny any retaliatory intent.

Chase submitted his affidavit in support of his objection to the defendants' motion for summary judgment.[1]  In his affidavit, Chase states generally that the retaliation he experienced included dumping his food and juice when it was delivered, interrupting his mail, shutting off his telephone calls, laughing when he was talking to his girlfriend on the telephone, and threatening him with physical harm for filing his administrative

---

[1]Although Chase did not comply with LR 7.2(b)(2), the defendants did not raise that issue and instead treated his affidavit as his factual statement.

complaints.  Chase states that Ash and Makara interfered with his meals by pouring juice on his hand, dropping his food tray with a snide comment, denying his requests for canteen items and giving him unrequested items such as "Preparation H."  He states that he did not receive many of the letters that were mailed to him by his girlfriend, his mother, and other friends, and he believes that Ash and Makara were involved with or responsible for the interruption of his mail.  He states that Ash and Makara twice moved him without putting him in handcuffs, in violation of SHU policy, and told him that he needed to stop seeing lawyers and filing lawsuits and needed to drop his lawsuit.  He also stated that Ash and Makara followed him inside his cell and Ash said to him:  "'[I]t could be very easy for you to just resist arrest again.'"  Aff. ¶ 43.  Chase interpreted that incident as a threat.  The other incidents he describes involved "officers" or "staff" who are not identified as either Ash or Makara.

Makara and Ash state in their affidavits that they had nothing to do with Chase's mail and were not aware of anyone else tampering with his mail.  They both deny ever disconnecting any of his telephone calls.  They both acknowledge that they might have accidentally spilled juice when filling Chase's cup but deny any intentional spilling.  They both deny the incidents Chase describes as threatening and the comments that he says they made.

Chase's statements about the specific conduct he ascribes to Ash and Makara, taken in the light most favorable to Chase, could constitute adverse retaliatory actions.  See Morris, 449 F.3d at 685–86 (discussing quantum of retaliatory conduct necessary to support claim).  Their denials only establish disputed facts that are material to the claim.  Therefore, they are not entitled to summary judgment on the retaliation claim against them.

Although the retaliation claim survives summary judgment, it would appear to be inefficient to hold a trial on just that claim in light of the disposition of Chase's other claims.  Further, the defendants could have avoided the complex motion for summary judgment and the delay in resolving the other claims if they had moved expeditiously to resolve those claims.[2]  Therefore, the retaliation claim in Count IV against Ash and Makara is dismissed without prejudice.  No attorneys fees or costs are awarded.

---

[2]Ash and Makara could have moved early in the case to dismiss claims or clarify that the claims other than retaliation were not brought against them.  Their focus for summary judgment should have been on the single claim against them.  The claim against Cattell was withdrawn within days of when the complaint was filed and did not require a motion for summary judgment.

Conclusion

For the foregoing reasons, the defendants' motion for
summary judgment (document no. 19) is denied.  The plaintiff's
motion for dismissal of his claims without prejudice (document
no. 26) is granted in part and denied in part.  The plaintiffs'
claims are dismissed as follows:  the claim for injunctive relief
against Bruce Cattell was previously withdrawn; all claims
against Officer Hormick were previously dismissed without
prejudice due to the plaintiff's failure to serve him; all claims
against the Roe and Doe defendants are dismissed without
prejudice due to the plaintiff's failure to identify and serve
those defendants within a reasonable time; the claim against
Peter Ash and Jonathan Makara is dismissed without prejudice
pursuant to Rule 41(a)(2).

The clerk of court shall enter judgment accordingly and
close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

August 17, 2006

cc:  Mary E. Maloney, Esquire
     Michael J. Sheehan, Esquire

10